IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

|  |  |  |
|---|---|---|
| SHARON HARDY, as personal representative of the estate of Jeffrey Hardy, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACT. NO.  2:21-cv-522-TFM-B |
| CITY OF SELMA, | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is *Defendant's Motion for Judgment as a Matter of Law*.  Doc. 188, filed August 31, 2023.  At the conclusion of the presentation of evidence by the parties in the trial of this matter, Defendant City of Selma motions the Court enter judgment as a matter of law, pursuant to Fed. R. Civ. P. 50, as to each of Plaintiffs Jeffrey Hardy, Toriano Neely, and Kendall Thomas's claims that they assert in their third amended complaint.  *Id.*  Having considered the motion, response (Doc. 196), evidence that was presented at trial, and relevant law, the motion is **GRANTED in part and DENIED in part**.

Also, pending before the Court is Plaintiffs Jeffrey Hardy, Toriano Neely, and Kendall Thomas's oral motion for judgment as a matter of law (Doc. 189) at the conclusion of the presentation of evidence in the trial of this matter.  Having considered the oral motion, evidence that was presented at trial, relevant law, and the jury's verdict the motion is **DENIED in part and DENIED as moot in part**.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background of this matter was initially summarized in the

Court's June 9, 2023 Memorandum Opinion and Order.  Doc. 126.  Since its entry, this matter went a jury trial that began on August 29, 2023, and concluded on August 31, 2023, after the jury returned a verdict in favor of Plaintiffs Jeffrey Hardy ("Hardy"), Toriano Neely ("Neely"), and Kendall Thomas ("Thomas") (collectively, "Plaintiffs").  *See* Doc. 170.

At the conclusion of the presentation of evidence by the parties during the trial, Defendant City of Selma ("Defendant" or "the City") filed its instant motion for judgment as a matter of law and Plaintiffs orally motioned for the same.  Docs. 188, 189.  The Court informed the parties it would withhold its ruling on the motion until after the jury returned its verdict.  *See* FED. R. CIV. P. 50(b) advisory committee's note to 1991 amendment ("Often it appears to the court or to the moving party that a motion for judgment as a matter of law made at the close of the evidence should be reserved for a post-verdict decision.  This is so because a jury verdict for the moving party moots the issue and because a pre-verdict ruling gambles that a reversal may result in a new trial that might have been avoided.  For these reasons, the court may often wisely decline to rule on a motion for judgment as a matter of law made at the close of the evidence, and it is not inappropriate for the moving party to suggest such a postponement of the ruling until after the verdict has been rendered.").  The parties each made their closing arguments, then the Court charged the jury, and after deliberation, the jury returned its verdict.  After the jury was instructed as to the claims, they found by a preponderance of the evidence in favor of each of the plaintiffs on their separate claims for violation of their due process rights pursuant to the Fourteenth Amendment, wrongful termination, and breach of contract.  Doc. 208.  The jury awarded Hardy $0 for lost income and benefits and $250,000 for mental anguish and emotional distress.  *Id.*  The jury awarded Neely $75,000 for lost income and benefits and $200,000 for mental anguish and

emotional distress.  *Id.*  The jury awarded Thomas $150,000 for lost income and benefits and $200,000 for mental anguish and emotional distress.  *Id.*

At trial, the Court granted Plaintiffs' request to file a written response to the City's motion for judgment as a matter of law, and Plaintiffs subsequently did so.  Doc. 196.

The motions are ripe for review based on the briefing and general oral argument.

## II.      STANDARD OF REVIEW

"Under Rule 50, a court should render judgment as a matter of law when . . . there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149, 120 S. Ct. 2097, 2109, 147 L. Ed. 2d 105 (2000) (citation omitted).  The court reviews "all the evidence, drawing all reasonable inferences in favor of the nonmoving party."  *Hubbard* [ *v. BankAtlantic Bancorp, Inc.*], 688 F.3d [713,] 724 [(11th Cir. 2012)].

*Home Design Servs. v. Turner Heritage Homes, Inc.*, 825 F.3d 1314, 1320 (11th Cir. 2016).

When the merits of the motion turn on the sufficiency of the evidence, we review the entire record, examining all evidence, by whomever presented, in the light most favorable to the nonmoving party, and drawing all reasonable inferences in the nonmovant's favor.  *See Russell* [*v. N. Broward Hosp.*], 346 F.3d [1335,] 1343 [(11th Cir. 2003)]; *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1154 (11th Cir. 2002); *Lambert v. Fulton County, Ga.*, 253 F.3d 588, 594 (11th Cir. 2001).  Moreover, [the Court does] not assume the jury's role of weighing conflicting evidence or inferences, or of assessing the credibility of witnesses.  *Brochu*, 304 F.3d at 1154-55 (quoting *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001).

Thus, although [we must] review the record as a whole, [we] must disregard all evidence favorable to the moving party that the jury [was] not required to believe.  That is, [we] give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses."

*Reeves* [ ], 530 U.S. [at] 151, 120 S. Ct. [at] 2110 [ ] (quoting 9A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2529, at 299-300 (2d ed. 1995)).

[A judgment as a matter of law will only stand] if "the facts and inferences point overwhelmingly in favor of [the movant], such that reasonable people could not

arrive at a contrary verdict." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997)). "It bears repeating," however, "that a mere scintilla of evidence does not create a jury question. [Judgment as a matter of law] need not be reserved for situations where there is a complete absence of facts to support a jury verdict. Rather, there must be a substantial conflict in [the] evidence," *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1230 (11th Cir. 2001) (quoting *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989)), enough such that a <u>reasonable</u> jury could find for the nonmovant.

*Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1169, 1177 (11th Cir. 2005).

## III.    DISCUSSION AND ANALYSIS

The Court will first address the City's motion for judgment as a matter of law, then Plaintiffs' oral motion for the same. The Court will then address the effect on the jury's verdict by its rulings on the motions for judgment as a matter of law.

### A.    Defendant's Motion for Judgment as a Matter of Law (Doc. 188)

The City presents several arguments in support of the motion for judgment as a matter of law: (1) Plaintiffs' breach of contract claims fail because evidence of a contract was not presented at the trial and the personnel handbook that was introduced specifically disclaims it represented a contract; (2) Plaintiffs' 42 U.S.C. § 1983 claims are barred by the applicable statute of limitations, and Plaintiffs' third amended complaint does not relate back to their original complaint; (3) Plaintiffs' §1983 claims fail because they did not pursue their available remedies; (4) Plaintiffs Jeffrey Hardy and Toriano Neely are not entitled to back pay, front pay, and reinstatement because they applied for, and were granted, Social Security Disability Insurance ("SSDI") benefits shortly after they were placed on leave; (5) Plaintiffs' claims for back pay ended when, on August 20, 2021, Selma Chief of Police Kenda Fulford ("Chief Fulford") offered each of them an opportunity to return to the department and they refused, or when, on October 14, 2022, Plaintiff Kendall Thomas was again offered an opportunity to return to the department; and (6) Plaintiffs' wrongful

termination claims fail because each testified they were not terminated.  Doc. 188.  The Court will address each argument in turn.

### 1.    Breach of Contract Claims

The City argues Plaintiffs' breach of contract claims fail because a written contract was not submitted into evidence and their claims cannot be based on the City's personnel handbook that was introduced in evidence because it precludes the formation of a contract.  Doc. 188 at 2.  In response, Plaintiffs argue the City was bound by the rules and regulations in its personnel handbook.  Doc. 196 at 3.

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages."  *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009).  "[T]he basic elements of a contract are an offer and an acceptance, consideration, and mutual assent to the essential terms of the agreement."  *Sirote & Permutt, P.C. v. Caldwell*, 293 So. 3d 867, 873 (Ala. 2019) (citations omitted).  The Alabama Supreme Court has stated:

> "[T]he rule is well settled in Alabama that an employee contract at will may be terminated by either party with or without cause or justification."  *Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725, 728 (Ala. 1987).  That is, either party may terminate an at-will employment relationship for a good reason, a wrong reason, or for no reason at all.  *Id*.  But, regardless of an employer's reason for terminating the relationship, "[t]his Court has recognized that an employee handbook can represent a binding contract obligating an employer to satisfy certa'n conditions precedent to dismissing an employee."  *Harper v. Winston Cnty.*, 892 So. 2d 346, 351 (Ala. 2004).

> To determine whether an employee handbook constitutes an offer to create a unilateral contract, we apply a three-part test.  *Hoffman-La Roche*, 512 So. 2d at 735. First, the language in the handbook must be "specific enough to constitute an offer."  *Id*.  Second, "the offer must have been communicated to the employee by issuance of the handbook, or otherwise."  *Id*.  And third, "the employee must have accepted the offer by retaining employment after he has become generally aware of the offer."  *Id*.

. . .

> "'Whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, not by their subjective intentions.'" *Id*. at 731 (citation omitted).  A handbook containing discharge procedures is thus specific enough to constitute an offer when the parties' outward manifestations are "clear enough that an employee . . . could reasonably believe that, as long as he worked within the guidelines set out in the handbook, he would not be terminated until all procedures set out in the handbook had been followed." *Id*. at 736-37 (footnote omitted).

*Davis v. City of Montevallo*, 380 So. 3d 382, 386 (Ala. 2023).

Plaintiffs' breach of contract claims state:

> The Plaintiffs are informed and believe, and on that basis alleges, that they had a property right in continued employment with the City of Selma, and therefore entitled to the contractual protections of procedural due process afforded by the Alabama Constitution (1901) Art. I, § 13 and § 35, the "due process policy" afforded by City of Selma Personnel Rules and Ala. Code (1975) § 11-43-230.

Doc. 1-1 at 561.

The personnel handbook reads:

> The rules and regulations contained in this handbook are the guidelines applicable to employment at the City of Selma, Alabama ("City").  The City Council established by ordinance the personnel rules and regulations of the City and approved guidelines and procedures to implement such policies.  The City Council has undertaken that responsibility by adopting this handbook by which personnel decisions regarding City employees **shall** be made.

Pls.' Ex. 27, at 5 (emphasis added).

Rule 8 of the personnel handbook is titled "Disciplinary Actions and Appeals."  Pls.' Ex. 27, at 43.  Rule 8.10 is the "Due Process Policy" that reads:

> Due Process Policy:  All City employees are **entitled to and will be** afforded the opportunity to give their side of [sic] before any adverse disciplinary action concerning their property rights will be determined.  It is the employee's right to be informed of the charges, receive written evidence and afforded the opportunity to respond in the presence of his or her department head.
>
> Step #1:  Scheduling of a Pre-Determination Hearing with the employee and the Department Head.  The department head **will** give a minimum twenty-four (24)

hour notification to the employee of the charge(s) and reason for disciplinary action. The notice **must** also advise the employee of the date, time and location of a pre-determination hearing in the Personnel Department.  The employee may waive the right to such hearing.

Step #2:  On the date of the pre-scheduled hearing, the hearing **will** be conducted by the Human Resources Director and recorded.  The employee and the department head **will** both have an opportunity to state their positions.  Following the comments by both parties, the employee **will** be informed of the decision within 5 days. Within this 5-day time frame, a discussion **will** take place concerning the evidence presented at the pre-determination hearing.  Subsequently, the employee **will** be notified in writing of the decision and given a signed copy.  A copy **will** be provided to the Director for inclusion into the employee's personnel file.

Pls.' Ex. 27, at 43 (emphasis added).

The use in the personnel handbook of the words "must," "shall," and "will," all of which are synonyms of one another, to describe the imperative to follow the handbook when one makes a personnel decision and the right of an employee to due process indicates they are obligatory. *See Davis*, 380 So. 3d at 387 ("The Handbook's pervasive use of "shall" demonstrates that the discharge procedures in Article 9 are binding." (citations omitted)); *see also Ex parte Brasher*, 555 So. 2d 192, 194 (Ala. 1989) ("The word 'shall' . . . usually indicates that the requirement is mandatory."); Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts § 11 at 112 (Thomson/West 2012) ("Mandatory words impose a duty; permissive words grant discretion.")).

Based on the use of mandatory language in the personnel handbook, an employee of the City's "could reasonably believe that, as long as he worked within the guidelines set out in the handbook, he would not be terminated until all procedures set out in the handbook had been followed." *Hoffman-La Roche*, 512 So. 2d at 736-37 (footnote omitted).

The City argues the personnel handbook disclaims a contract.  To support the City's argument, it cites to the following language that is found in the "Foreword" section of the personnel

handbook:

> All City policies and procedures, whether explicit or implied, as established for the City personnel system are intended to be guidelines and not a contract of employment between the City and its employees and should not be viewed as such.

Pls.' Ex. 27, at 5.

> [A]n employer that "does not wish the policies contained in the employee handbook to be construed as an offer for a unilateral contract . . . is free to so state in the handbook." *Hoffman-La Roche*, 512 So. 2d at 734. Nor can a handbook that expressly disclaims the existence of a contract "reasonably be construed to constitute a unilateral contract of employment, as a matter of law." *Abney v. Baptist Med. Ctrs.*, 597 So. 2d 682, 683 (Ala. 1992).
>
> Indeed, [the Alabama Supreme] Court has repeatedly held that no contract exists when the employee handbook contains an unambiguous disclaimer of a contract. In *McCluskey v. Unicare Health Facility, Inc.*, 484 So. 2d 398 (Ala. 1986), [the Alabama Supreme] Court held that an offer did not exist when the employees signed an acknowledgment stating that "'[t]his Handbook and the policies contained herein do not in any way constitute, and should not be construed as a contract of employment between the employer and the employee, or a promise of employment.'" *Id.* at 400. This Court later spotlighted the disclaimer from McCluskey as an exemplar of the kind of unambiguous statement that an employer should make "if the employer does not wish the policies contained in an employee handbook to be construed as an offer for a unilateral contract." *Hoffman-La Roche*, 512 So. 2d at 734. And in *Abney v. Baptist Medical Centers*, this Court held that an employer had successfully disclaimed a contract by providing that "'[t]he policies in this booklet are not an expressed or implied contract of employment.'" 597 So. 2d at 682 (emphasis omitted).

*Davis*, 380 So. 3d at 388-89.

The disclaimer language in the personnel handbook, unlike the disclaimer language used in *McCluskey* and *Abney*, does not explicitly state the policies contained in the handbook do not constitute a contract of employment. Rather, the personnel handbook disclaims "[a]ll City policies and procedures . . . established for the City personnel system" are intended to be a contract of employment between the City and its employees. Pls.' Ex. 27, at 5. The personnel handbook, in this case, includes "rules and regulations," and as the handbook explains, they were "established by ordinance" and the City "approved guidelines and procedures to implement such policies."

Pls.' Ex. 27, at 5.  Therefore, the rules and regulations in the personnel handbook are part of the City policies the City disclaims constitute a contract of employment.

Given the comprehensive language of the disclaimer language in the personnel handbook, the Court is compelled to find as a matter of law a contract did not exist between the City and its employees, the plaintiffs.  Therefore, the City's motion for judgment as a matter of law as to Plaintiffs' breach of contract claims is granted.[1]

### 2.   Statute of Limitations for § 1983 Claims and Relation Back

The City argues Plaintiffs' § 1983 claims are barred by Alabama's two-year statute of limitations period, since they filed their original complaint on January 15, 2019, and did not assert their § 1983 claims until they filed their third amended complaint on November 29, 2021.  Doc. 188 at 3-4.  Further, the City argues Plaintiffs' § 1983 claims do not relate back to their original complaint.  *Id.*

In response, Plaintiffs argue, under federal and state law, their claims in their third amended complaint relate back to their claims in the original complaint and, therefore, are not barred by the applicable statute of limitations.  Doc. 196 at 4-9.

On January 15, 2019, Plaintiffs and another previously involved plaintiff in this matter originally filed their "Complaint for Declaratory and Injunctive Relief Pursuant to Code of Alabama 6-6-222 and Request for Damages" in the Circuit Court of Dallas County, Alabama. Doc. 1-1 at 2-21.  In the original complaint, the plaintiffs sought from the City injunctive and equitable relief, including reinstatement and lost pay, pursuant to Ala. Code §§ 11-43-46, 11-43-81.  *Id.* 6-7.  On November 29, 2021, Plaintiffs filed their third amended complaint, the operative

---

[1] The Court will address the effect on the jury's verdict by its rulings on the motions for judgment as a matter of law in Section IV of this Memorandum Opinion and Order.

complaint, in which they bring claims against the City, and Darrio Melton and Sean Van Diver -- both of whom were dismissed from this action -- for violation of the Due Process Clause of the Fourteenth Amendment, wrongful termination, and breach of contract. *Id.* at 635-48; *see* Doc. 71.

In Plaintiffs' third amended complaint, they claim on November 2, 2018, the Selma police chief wrote to each of them they were, effective immediately, placed on unpaid administrative leave, which is when they claim they were constructively discharged and is the basis of their due process claims pursuant to § 1983.  Doc. 1-2 at 5, 8.

The applicable statute of limitations for § 1983 claims is the forum state's general or residual statute of limitations for personal injury actions. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *Lufkin v. McCallum*, 956 F.2d 1104, 1105 (11th Cir. 1992).  In Alabama, the statute of limitations for a personal injury action is two (2) years. *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008); ALA. CODE 6-2-38(l).

> In Section 1983 cases, "'the statute [of limitations] does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'"  *Calhoun v. Ala. Alcoholic Beverage Control Bd.*, 705 F.2d 422, 425 (11th Cir. 1983) (quoting *Reeb v. Econ. Opportunity Atlanta, Inc.*, 516 F.2d 924, 930 (5th Cir. 1975)).  Thus Section 1983 actions do not accrue until the plaintiff knows or has reason to know that he has been injured.  *Calhoun*, 705 F.2d at 424; *Rubin*, 621 F.2d at 116; *Lavellee*, 611 F.2d at 1131.  Nor will a Section 1983 action accrue until the plaintiff is aware or should have been aware who has inflicted the injury.  *Lavellee*, 611 F.2d at 1131 (quoting *United States v. Kubrick*, 444 U.S. 111, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979)).

*Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987); *see also McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) (explaining *Mullinax* "has long been the law of this Circuit" for § 1983 actions).

Two (2) years from the date when each of Plaintiffs knew or had reason to know they were injured, November 2, 2018, when they were placed on unpaid administrative leave, was November

3, 2020.[2]  The earliest date when Plaintiffs brought their § 1983 claims against the City was August 28, 2021, when they filed their motion to amend and filed their third amended complaint.  Doc. 1-1 at 548-63, 572-88.  Solely based on Plaintiffs' allegations in their third amended complaint, their claims that are brought pursuant to § 1983 against the City would theoretically be barred by the applicable statute of limitations, but the inquiry is not complete.

Fed. R. Civ. P. 15(c) governs whether Plaintiffs' third amended complaint relates back to their original complaint, and if it does, the applicable statute of limitations would not bar their claims against the City.  *See Makro Cap. of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008) ("Rule 15 identifies two possible ways in which an amended pleading can relate back to an earlier pleading, thus allowing it to adopt the latter's filing date and not be time-barred by statutes of limitations or similar provisions.").  "[Fed. R. Civ. P. 15] mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 553 (2010).  Fed. R. Civ. P. 15(c) provides:

(c)     Relation Back of Amendments.

(1)     When an Amendment Relates Back.  An amendment to a pleading relates back to the date of the original pleading when:

(A)     the law that provides the applicable statute of limitations allows relation back;

(B)     the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or

(C)     the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons

---

[2] For a federal period of limitations, "exclude the day of the event that triggers the period."  FED. R. CIV. P. 6(a)(1)(A).

and complaint, the party to be brought in by amendment:

> (i)    received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii)   knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c).

> [Fed. R. Civ. P.] 15 identifies two possible ways in which an amended pleading can relate back to an earlier pleading . . . .  First, relation back is permitted when the law imposing the statute of limitations itself permits relation back.  *See* FED. R. CIV. P. 15(c)(1)(A).  Second, a pleading would relate back if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."  FED. R. CIV. P. 15(c)(1)(B).

*Makro Capital of Am.*, 543 F.3d at 1258 (footnote omitted).

As to whether Plaintiffs' third amended complaint meets the common transaction or occurrence test of Fed. R. Civ. P. 15(c)(1)(B), the Court's review of the original complaint and the third amended complaint shows the two pleadings allege substantially the same core facts out of which their claims against the City arose.  *Compare* Doc. 1-1 at 4-6 *with* Doc. 1-2 at 4-7.

Additionally:

> [Fed. R. Civ. P. 15(c)(1)(A) i]ncorporates the relation-back rules of the law of a state when the state's law provides the applicable statute of limitations.  As a result, if an amendment relates back under the law that provides the applicable statute of limitations, that amendment relates back under Rule 15(c)(1)[(A)] even if the amendment would not relate back under the federal law rules.

*Saxton v. ACF Indus., Inc.*, 254 F.3d 959, 962-63 (11th Cir. 2001).  Where state "law affords a more forgiving principle of relation back than the one provided in [Fed. R. Civ. P. 15(c)(1)(B)-(C)], it should be available to save the claim."  *Id.* at 962 (quoting FED. R. CIV. P. 15(c)(1) advisory committee's note to 1991 amendment).  Here, the applicable statute of limitations for § 1983 claims is based on Alabama's statute of limitations for personal-injury actions, so the Court must

also analyze whether Plaintiffs' claims relate back under Alabama's relation-back rules.

Ala. R. Civ. P. 15(c) provides:

(c)      Relation back of amendments.  An amendment of a pleading relates back to the date of the original pleading when

> (1)      relation back is permitted by the law that provides the statute of limitations application to the action, or

> (2)      the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, except as may be otherwise provided in Rule 13(c) for counterclaims maturing or acquired after pleading, or

> (3)      the amendment, other than one naming a party under the party's true name after having been initially sued under a fictitious name, changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the applicable period of limitations or one hundred twenty (120) days of the commencement of the action, whichever comes later, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party, or

> (4)      relation back is permitted by principles applicable to fictitious party practice pursuant to Rule 9 (h).

ALA. R. CIV. P. 15(c)(1)-(4).

Here, the Court need only focus on Ala. R. Civ. P. 15(c)(2) as it applies to Plaintiffs' third amended complaint.  Ala. R. Civ. P. 15(c)(2) is substantially similar to Fed. R. Civ. P. 15(c)(1)(B) under which the Court found Plaintiffs' § 1983 claims related back to their original complaint and the Court finds any differences between them are immaterial to the Court's analysis.  Indeed, the Alabama Supreme Court has recognized "federal cases are authoritative in construing the Alabama Rules of Civil Procedure because the Alabama rules were patterned after the Federal Rules of Civil Procedure."  *Borders v. City of Huntsville*, 875 So. 2d 1168, 1176 n.2 (Ala. 2003) (citation omitted).  Therefore, the Court finds the amendment does relate back under that Rule because the

Court found it relates back under the Federal Rules of Civil Procedure.

Therefore, the City's motion for judgment as a matter of law is denied as to its arguments that Plaintiffs' § 1983 claims are barred by the applicable statute of limitations and Plaintiffs' third amended complaint does not relate back to their original complaint, and the Court finds Plaintiffs' § 1983 claims relate back to their original complaint.

### 3.    Plaintiffs' §1983 claims fail because they did not pursue their available remedies

The City argues Plaintiffs' § 1983 claims for violation of their procedural due process rights fail because they did not pursue their available remedies pursuant to the procedures to contest an adverse employment action that are outlined in the City's personnel handbook.  Doc. 188 at 4.  The City also argues state law provides a sufficient remedy to Plaintiffs.  *Id.* at 4-5.

In response, Plaintiffs argue, as an initial matter, the City did not comply with the requirements that are set forth by the Supreme Court in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985) (citations omitted):  "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  Doc. 196 at 9-12.  Specifically, Plaintiffs argue they were not given a meaningful opportunity to respond to the reasons that they were placed on unpaid administrative leave and were not formally asked to respond to such.  *Id.*  Plaintiffs argue, since they were not given a meaningful opportunity to respond, the City's argument that each of Plaintiffs' procedural due process claims are barred by *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994), because each of them could have sought a state court hearing is inapplicable since none of them were afforded a pretermination hearing.  Doc. 196 at 10.

The personnel handbook states:

8.10    <u>Due Process Policy</u>:  All City employees are entitled to and will be afforded the opportunity to give their side of [sic] before any adverse disciplinary action concerning their property rights will be determined.  It is the employee's right to be informed of the charges, receive written evidence and afforded the opportunity to respond in the presence of his or her department head.

Step #1:  <u>Scheduling of a Pre-Determination Hearing with the employee and the Department Head.</u>
The department head will give a minimum twenty-four (24) hour notification to the employee of the charge(s) and reason for disciplinary action.  The notice must also advise the employee of the date, time and location of a pre-determination hearing in the Personnel Department.  The employee may waive the right to such hearing.

Step #2:  On the date of the pre-scheduled hearing, the hearing will be conducted by the Human Resources Director and recorded.  The employee and the department head will both have an opportunity to state their positions.  Following the comments by both parties, the employee will be informed of the decision within 5 days.  Within this 5-day time frame, a discussion will take place concerning the evidence presented at the pre-determination hearing.  Subsequently, the employee will be notified in writing of the decision and given a signed copy.  A copy will be provided to the Director for inclusion in the employee's personnel file.

8.10(a) <u>RIGHT TO APPEAL BEFORE THE PERSONNEL BOARD</u>
Classified Service employees have a right to appeal suspensions, demotions and dismissals demotion before the Personnel Board.  With respect to suspensions, employees do not have a right to a hearing before the Personnel Board if such suspension or suspensions do not exceed an aggregate of five (5) calendar days as a singular offense or ten (10) days cumulative in any year of service.  Should the suspensions exceed the five (5) day limitation for a single offense or ten (10) days cumulative limitation, a regular employee shall have the right of appeal as provided in this rule.  Such suspension shall be effected by service upon the employee by the department head or Mayor, a written statement of the delinquency for which suspension was made, a copy of which must be delivered to the Human Resources Director.
The suspended employee shall have a right to file an answer with Personnel Board, department head and the Mayor.

8.10    <u>APPEAL PROCEDURE</u>
An employee with regular status shall have the right to appeal disciplinary action of dismissal, demotion, or suspension.  An employee desiring to appeal shall within ten (10) calendar days after notice thereof, file with the

director, in duplicate, a written answer to the charges and request a hearing. Such answer shall contain:

- The reason for dismissal, demotion, or suspension
- An admission or denial or [sic] guilt.
- Reasons why the dismissal, demotion or suspension should not take effect.  Upon receipt of the appeal, the Director shall forward a copy thereof to the department head and the Mayor

Pls.' Ex. 27, at 39.

At trial, Plaintiffs introduced evidence that showed, and the City did not rebut, they were not scheduled a pre-determination hearing at which each of them could present their "side of the story." *Loudermill*, 470 U.S. at 546.  Further, Plaintiffs introduced evidence that showed they requested a personnel board hearing via letters that were addressed to the City's attorney and personnel board.  Pls.' Exs. 12, 16, 17, 18.  The jury heard testimony and argument as to whether Plaintiffs sufficiently requested a hearing and whether they were afforded a pre-determination hearing at all, then returned a verdict in Plaintiffs' favor, which the Court finds a reasonable jury could conclude based on the evidence.

As to the City's argument Plaintiffs had adequate state law remedies that were available to address their procedural due process claims, the City confines its argument to the proffer of their argument and concluding sentence, with a string cite in between.  *See* Doc. 188 at 4-5.  The City's string cite focuses on cases that interpret *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994).  *See* Doc. 188 at 5.  One of those interpretive cases, *Cotton v. Jackson*, 216 F.3d 1328 (11th Cir. 2000), states:

In *McKinney* [ ]*,* 20 F.3d [at] 1557 [ ], we said that "only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise."  It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim.  *See id.; see also Bass v. Perrin,* 170 F.3d 1312, 1319 (11th Cir.1999); *Harris v. Board of Educ.,* 105 F.3d 591, 596 (11th Cir.1997).  This rule (that a section 1983

claim is not stated unless inadequate state procedures exist to remedy an alleged procedural deprivation) recognizes that the state must have the opportunity to "remedy the procedural failings of its subdivisions and agencies in the appropriate fora—agencies, review boards, and state courts" before being subjected to a claim alleging a procedural due process violation. *See McKinney,* 20 F.3d at 1560; *see also Horton v. Board of County Comm'rs,* 202 F.3d 1297, 1300 (11th Cir.2000).

Assuming a plaintiff has shown a deprivation of some right protected by the due process clause, we—when determining if a plaintiff has stated a valid procedural due process claim—look to whether the available state procedures are adequate to correct the alleged procedural deficiencies. *See McKinney,* 20 F.3d at 1563; *see also Bell v. City of Demopolis, Alabama,* 86 F.3d 191, 192 (11th Cir.1996); *Narey v. Dean,* 32 F.3d 1521, 1527–28 (11th Cir.1994). If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process. *See McKinney,* 20 F.3d at 1565 ("The fact that [McKinney] failed to avail himself of the full procedures provided by state law . . . does not constitute a sign of their inadequacy."); *Bell,* 86 F.3d at 192; *Narey,* 32 F.3d at 1528. And, to be adequate, the state procedure need not provide all the relief available under section 1983. *See McKinney,* 20 F.3d at 1564. Instead, the state procedure must be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due.

*Id.* at 1330-31.

A plaintiff is not required to attempt to avail themself of a possible state remedy in order

to state a claim for violation of their procedural due process rights:

The *McKinney* rule is not micro in its focus, but macro. It does not look to the actual involvement of state courts or whether they were asked to provide a remedy in the specific case now before the federal court. Instead, the *McKinney* rule looks to the existence of an opportunity—to whether the state courts, if asked, generally would provide an adequate remedy for the procedural deprivation the federal court plaintiff claims to have suffered. If state courts would, then there is no federal procedural due process violation regardless of whether the plaintiff has taken advantage of the remedy or attempted to do so.

*Horton*, 202 F.3d 1297, 1300 (11th Cir. 2000).

The City failed to cite to any Alabama law or federal case that interprets Alabama law to

support their argument, and the supporting cases that they include in their string cite apply Florida

and Georgia law. It is not incumbent on the Court to make arguments on behalf of the parties but

to consider those arguments and supporting law that are presented. *See Fils v. City of Aventura,*

647 F.3d 1272, 1284 (11th Cir. 2011) ("To prevail on a particular theory of liability, a party must present that argument to the district court. . . .  Our adversarial system requires it; district courts cannot concoct or resurrect arguments neither made nor advanced by the parties."  (citations and internal citation omitted)); *cf. Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation.  That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.").  The Court finds this particularly true when the argument is presented after the parties have concluded their presentation of evidence to a jury and that jury has returned its verdict.  The Court finds the City's improperly supported argument fails as presented.  The Court need not go digging through Alabama case law to bolster the City's argument.[3]

Accordingly, the City's motion for judgment as a matter of law is denied as to its argument that Plaintiffs' procedural due process claims fail because they did not pursue their available remedies.

### 4.    Effect of SSDI Benefits on Plaintiffs' Claims for Back Pay, Front Pay, and Reinstatement

The City argues Plaintiffs Hardy and Neely are not entitled to back pay, front pay, and reinstatement because they were approved for SSDI benefits after they were placed on leave.  Doc. 188 at 5-7.

In response, Plaintiffs argue, based on the evidence that was presented to the jury at trial, they are entitled to back pay, front pay, and/or reinstatement.  Doc. 196 at 12-13.

---

[3] This is true even if it is possible the argument may have had merit if it was properly argued.  This situation is similar to objections that are made at trial at which it is incumbent on the parties to present them to the Court and not for the Court to raise.

"In procedural due process cases . . . although the claimant may seek compensatory damages, the primary relief sought is equitable: for instance, in an employment case, the claimant typically seeks reinstatement and a properly conducted pre-termination hearing." *McKinney*, 20 F.3d at 1557. Further, "the Eleventh Circuit has allowed a § 1983 plaintiff to receive back pay, lost benefits, loss of future income and damages for mental anguish and emotional distress arising from procedural due process violations based on the unjustified discharges of a public employee." *Galbreath v. Hale Cnty., Ala. Comm'n*, Civ. Act. No. 15-308-CG-N, 2017 U.S. Dist. LEXIS 125018, at *8, 2017 WL 3402964, at *3 (S.D. Ala. Aug. 8, 2017) (listing cases in support).

The City cites to *Serino v. Potter*, 178 F. App'x 552 (7th Cir. 2006), and *Acevedo Martinez v. Coatings, Inc.*, 286 F. Supp. 2d 107 (Dist. of P.R. 2003), to support its argument. However, the Court finds not only are the City's cited cases not binding, but that are also distinguishable from the facts at hand.

In *Serino*, the plaintiff filed a claim for disability discrimination and retaliation against her employer, which proceeded to trial, and after the plaintiff presented her witnesses, her employer moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50, which the district court granted. 178 F. App'x at 553-54. On appeal, the Seventh Circuit found the plaintiff's claims for reinstatement and back pay failed "because of her admission in her application for disability retirement that she was unable to work" and "her trial testimony did not provide a 'sufficient explanation.'" *Serino*, 178 F. App'x at 555-56 (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-07, 119 S. Ct. 1597, 143 L. Ed. 2d 966 (1999) and *Feldman v. Am. Mem. Life Ins. Co.*, 196 F.3d 783, 790-91 (7th Cir. 1999)).

In *Acevedo*, the plaintiff filed a claim for age discrimination, which proceeded to trial, a verdict was returned, and the matter was before the district court on the defendants' motion for

judgment as a matter of law pursuant to Fed. R. Civ. P. 50. 286 F. Supp. 2d at 109-10. The district court found the plaintiff was not entitled to back pay, front pay, or reinstatement since she was determined to be disabled by the Social Security Administration ("SSA"), she declined vocational rehabilitation services, did not seek alternate employment, and did not "otherwise submit[ ] evidence to prove that she [was] fit to go back to work." *Id.* at 116.

Based on *Serino* and *Acevedo*, it seems, even if a plaintiff is approved for SSDI benefits, such is not dispositive, by itself, of the issue whether a plaintiff is disabled-and entitled to damages such as back pay, front pay, and reinstatement-and sufficient explanation may be presented to counter the presumption that the plaintiff is disabled.

Here, the jury heard testimony and argument as to Plaintiffs Hardy and Neely's maladies that culminated in their application for SSDI benefits as well as their employment, and attempts thereof, after they were placed on unpaid administrative leave from the Selma Police Department ("SPD"). The jury did not award Plaintiff Hardy money for lost income and benefits but did award Plaintiff Neely such in the amount of $75,000, which the Court finds a reasonable jury could conclude in both instances, based on the presented evidence.

Therefore, the City's motion for judgment as a matter of law is denied as to its argument that Plaintiffs Hardy and Neely are not entitled to back pay, front pay, and reinstatement because they were approved for SSDI benefits after they were placed on leave.

### 5. Whether Plaintiffs' Claims for Back Pay Ended When They Were Offered an Opportunity to Return to Work

The City argues Plaintiffs' claims for back pay ended when, on August 20, 2021, Selma Chief Fulford offered each of them an opportunity to return to the department and they refused, or when, on October 14, 2022, Plaintiff Kendall Thomas was again offered an opportunity to return to the department. Doc. 188 at 7.

The criminal cases that were brought against Plaintiffs in the Circuit Court of Dallas County, Alabama were dismissed with prejudice by an order of that court on Monday, August 16, 2021. Doc. 1-1 at 482-84. Chief Fulford wrote separate letters to Plaintiffs that are dated August 20, 2021 (a Friday). Def.'s Exs. 14, 34, 53.

To Plaintiff Hardy, Chief Fulford wrote:

First, I would like to **Congratulate** you on the dismissal of your case. I know that you resigned from your position, so I am reaching out to you to see if you have plans on re-applying with the City of Selma Police Department. If so, please contact my office as soon as possible. Thank you for your prompt attention concerning this matter.

Def.'s Ex. 14.

To Plaintiff Neely, Chief Fulford wrote:

First, I would like to **Congratulate** you on the dismissal of your case. My office was made aware that you retired. So I am reaching out to you to see if you have plans on re-applying with the City of Selma Police Department. If so, please contact my office as soon as possible. Thank you for your prompt attention concerning this matter.

Def.'s Ex. 53.

To Plaintiff Thomas, Chief Fulford wrote:

First, I would like to **Congratulate** you on the dismissal of your case. With that being said, you are still a City of Selma employee and I would need to have a meeting with you to discuss your employment plans moving forward. Please contact my office as soon as possible. Thank you for your prompt attention concerning this matter.

Def.'s Ex. 34.

Chief Fulford sent a follow-up letter to Plaintiff Thomas that is dated October 14, 2022, and reads:

As you know, I previously wrote to you on August 20, 2021 requesting you contact me about returning to work for the Selma Police Department. Although you did not respond to my prior correspondence, I am writing to extend another opportunity for you to return to work as a Sergeant with the Selma Police Department. This

opportunity is extended with the understanding it does not waive any defenses the City might have due to your failure to respond to my first letter.

I understand your APOST certification has lapsed. If you accept this opportunity to return to work, the City will assist you in becoming recertified. You do not have to dismiss your current lawsuit against the City in order to return to work.

If you do not respond to this request by the close of business on Monday, October 24, 2022, then pursuant to Selma Personnel Rule 6.0(a) you will be dismissed for job abandonment.

Def.'s Ex. 35.

"[O]ne accused on . . . a civil rights violation can toll the continuing accrual of backpay damages by making an unconditional offer of hiring or . . . re-hiring." *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1163 (11th Cir. 2002) (interpreting *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 102 S. Ct. 3057, 73 L. Ed. 2d 721 (1982)); *see also Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 879 (11th Cir. 1986) ("In *Ford Motor Co.*, the Supreme Court held that the accrual of potential back pay liability would be tolled by a claimant's rejection of the employer's unconditional offer of a job substantially equivalent to the one he was denied.").

At trial, Plaintiffs described their individual receipts of the letters from Chief Fulford and the letters to Plaintiffs Neely and Thomas were introduced into evidence. The language that is used in the letters that were addressed to Plaintiffs Hardy and Neely asks if they intend to re-apply with the SPD and does not actually offer employment or the guarantee of a position. Plaintiff Thomas testified he met with Chief Fulford about his return to the SPD but was unable to obtain information about his potential position with the department if he returned, including compensation, rank, and back pay and did not receive follow up inquiries about his return to work. Therefore, a reasonable jury could conclude the letters from Chief Fulford to Plaintiffs about their potential return to employment with the SPD were not concrete offers of employment that would preclude Plaintiffs from compensatory damages from the time when the letters were sent.

Accordingly, the City's motion for judgment as a matter of law is denied as to its argument that Plaintiffs' claims for back pay ended when, on August 20, 2021, Chief Fulford offered each of them an opportunity to return to the department and they refused, or when, on October 14, 2022, Plaintiff Kendall Thomas was again offered an opportunity to return to the department.

6.      **Whether Plaintiffs' Testimony Bar Each of Their Wrongful Termination Claims**

The City argues Plaintiffs' wrongful termination claims fail because Plaintiff Hardy testified he resigned on November 21, 2018, Plaintiff Neely testified he retired as of January 1, 2019, and Plaintiff Thomas admitted during his testimony he was not terminated.  Doc. 188 at 8.

"The dismissal of a public employee who is entitled to a pretermination hearing, without such a hearing, is a wrongful act constituting a tort under Alabama law . . . ."  *City of Gadsden v. Harbin*, 398 So. 2d 707, 708 (Ala. Civ. App. 1981) (citations omitted).

In Plaintiffs' third amended complaint, they allege:  "Before being placed on leave without pay and or wrongfully terminated, each Plaintiff was entitled to oral or written notice of any charges, an explanation of the City['s] evidence, and an opportunity to present his[ ] side of the story, but [the City] wrongfully failed to provide the same."  Doc. 1-2 at 12.  At trial, Plaintiffs contended they were effectively terminated because they were placed on unpaid administrative leave and deprived of a pretermination hearing for an extended period.

Under Alabama law, the tort of wrongful termination of a public employee is similar to a claim for a due process violation insofar as both require a pretermination hearing before an employee may be lawfully dismissed.  *Compare Loudermill*, 470 U.S. at 545-48, *with Harbin*, 398 So. 2d at 708.  The Court finds the Eleventh Circuit's analysis of whether an employee's resignation is voluntary for due process purposes instructive in the context of a wrongful termination analysis.

> Under the due-process voluntariness framework, we presume that a resignation is voluntary unless the employee points to "sufficient evidence to establish that the resignation was involuntarily extracted." [*Hargray v. City of Hallandale*, 57 F.3d 1560,] 1568 [(11th Cir. 1995)] (citation and quotation marks omitted).   Two situations warrant deeming an employee's resignation involuntary: "(1) where the employer forces the resignation by coercion or duress; or (2) where the employer obtains the resignation by deceiving or misrepresenting a material fact to the employee." *Id.* (citations omitted).

*Rodriguez v. City of Doral*, 863 F.3d 1343, 1352 (11th Cir. 2017).  The same framework applies to an employee who claims constructive discharge.  *Poindexter v. Dep't of Human Res.*, 946 F. Supp. 2d 1278, 1286 (M.D. Ala. 2013) (citing *Hargray*, 57 F.3d at 1568).

"Under the coercion or duress theory, [the Court] must consider whether, under the totality of the circumstances, the employer's conduct in obtaining the employee's resignation deprived the employee of free will in choosing to resign."  *Hargray*, 57 F.3d 1568.  The Court's analysis is guided by a list of factors:

> (1) [W]hether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; (4) whether the employee was permitted to select the effective date of the resignation; and (5) whether the employee had the advice of counsel.

*Rodriguez*, 863 F.3d at 1352.

> "The assessment [of] whether real alternatives were offered is gauged by an objective standard rather than by the employee's purely subjective evaluation; that the employee may perceive his only option to be resignation . . . is irrelevant." *Stone* [*v. Univ. of Md. Med. Sys. Corp.*]*,* 855 F.2d [855 F.2d 167,] 174 [(4th Cir. 1988).   *See Christie* [*v. United States*]*,* 518 F.2d [584,] 587-88 [(Ct. Cl. 1975)].  Moreover, "the mere fact that the choice is between comparably unpleasant alternatives . . . does not of itself establish that a resignation was induced by duress or coercion, hence was involuntary."  *Stone,* 855 F.2d at 174.

*Hargray*, 57 F.3d at 1568.

Here, each of the plaintiffs testified they were first placed on paid administrative leave then unpaid administrative leave on November 2, 2018.  Chief Fulford did not send letters to Plaintiffs

about their employment with the SPD until August 20, 2021, almost three (3) years after Plaintiffs were placed on unpaid administrative leave. Testimony showed Plaintiffs were not offered alternative employment while they were placed on administrative leave as well as were assisted by the advice of counsel during that time.

Plaintiffs Hardy and Neely, who each made formal employment decisions to resign and quit, respectively, testified about each of their financial circumstances that preceded their decisions to do so. Therefore, based on the evidence that was presented at trial, a reasonable jury could conclude Plaintiffs Hardy and Neely did not voluntarily resign their positions with the SPD and were wrongfully terminated.

While Plaintiff Thomas testified he neither resigned nor retired and was not formally terminated, his testimony showed, in addition to the fact that he was on unpaid administrative leave for almost three (3) years, he met with Chief Fulford about his return to the SPD but was unable to obtain information about his potential position with the department if he returned, including compensation, rank, and back pay and did not receive follow up inquiries about his return to work. Based on the evidence that was presented at trial, a reasonable jury could conclude Plaintiff Thomas was constructively terminated for purposes of his wrongful termination claim.

Accordingly, the City's motion for judgment as a matter of law is denied as to its argument that Plaintiffs' wrongful termination claims fail because each testified they were not terminated.

**B.      Plaintiffs' Oral Motion for Judgment as a Matter of Law (Doc. 189)**

Since the Court analyzed each of Plaintiffs' claims when it addressed the City's motion for judgment as a matter of law, it will not separately address those claims as to Plaintiffs' oral motion for the same. The Court dismissed as a matter of law Plaintiffs' breach of contract claims, and did not base its decision on the sufficiency of the evidence that was presented at the trial of this matter,

so the presumption in favor of the nonmoving party is not a factor to consider.  As to the remaining claims, violation of Plaintiffs' procedural due process rights and wrongful termination, the jury returned a verdict in Plaintiffs' favor as to those claims, so Plaintiffs' motion as to those claims is denied as moot.

## IV.     EFFECT ON THE JURY'S VERDICT

The Court granted the City's motion for judgment as a matter of law as to Plaintiffs' breach of contract. claims.  The decision as to Plaintiffs' breach of contract claims ultimately does not affect the jury's damages awards.

The Court notes it submitted a general verdict form to the jury after the City advocated for such over Plaintiffs' objection to the same, and despite the fact that both parties, prior to trial, submitted comprehensive proposed special interrogatories.  *See* Docs. 164, 166.

The verdict form that the jury returned prompted them to find whether they found in favor of each of the plaintiffs as to each of their claims for violation of their due process rights, wrongful termination, and breach of contract.  Doc. 208.  The jury found in favor of each of the plaintiffs as to each of their three claims.  *Id.*  The jury was then prompted, if they found in favor of a plaintiff as to any of his claims, to award compensatory damages for his lost wages and benefits that he proved by a preponderance of the evidence.  *Id.*  The jury was then prompted, if they found in favor of a plaintiff for either, or both, of his claims for violation of his due process rights or wrongful termination, to award damages for his mental anguish and emotional distress that he proved by a preponderance of the evidence.  *Id.*

The compensatory damages award for each of the plaintiffs was based on a calculable sum-lost wages and benefits for a finite period-and the jury had multiple bases, not including the claims for breach of contract, by which to make such awards.  Further, the damages awards for each of

the plaintiffs' mental anguish and emotional distress were contingent on the jury's finding that each of them proved by a preponderance of the evidence either, or both, of each of their claims for violation of his due process rights or wrongful termination, and is not contingent on a breach of contract finding. Therefore, the jury's damages awards are not affected by the Court's decision to grant the City's motion for judgment as a matter of law as to each of the plaintiffs' breach of contract claims.

## V.    CONCLUSION

Accordingly, Defendant's Motion for Judgment as a Matter of Law (Doc. 188) is **GRANTED in part and DENIED in part**. The motion (Doc. 188) is **GRANTED** as to Plaintiffs Jeffrey Hardy, Toriano Neely, and Kendall Thomas's claims for breach of contract (Count 4), which are **DISMISSED with prejudice**. The motion (Doc. 188) is otherwise **DENIED**.

Further, Plaintiffs' oral motion for judgment as a matter of law (Doc. 189) is **DENIED in part and DENIED as moot in part**. The oral motion is **DENIED** as to Jeffrey Hardy, Toriano Neely, and Kendall Thomas's claims for breach of contract (Count 4), and **DENIED as moot** as to their claims for violation of their procedural due process rights, pursuant to 42 U.S.C. § 1983, (Count 1) and wrongful termination (Count 3).

**DONE** and **ORDERED** this 23rd day of August 2024.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE